UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTA BLUMBERG,

       Plaintiff,

                                                  Case No. 13-CV-15042

vs.

                                                  HON. MARK A. GOLDSMITH

MICHAEL AMBROSE, et al.,

       Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' SECOND MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS (Dkt. 30)

### I. INTRODUCTION

    This matter is presently before the Court on Defendants' second motion for a protective order and to quash subpoenas (Dkt. 30). The parties have fully briefed the issues, and a hearing was held on August 21, 2014. For the reasons that follow, the Court denies Defendants' motion.

### II. BACKGROUND

    On January 29, 2014, Plaintiff provided notice to Defendants that she intended to serve 35 subpoenas directed to third parties. Pl. Resp. at 3-4 (Dkt. 32). On February 11, 2014, Defendants filed their first motion for a protective order and to quash subpoenas (Dkt. 18) directed to 33 of Defendant CampDoc's[1] customer camps and to Defendant Dr. Ambrose's employer and medical school. Defs. Mot. ¶ 4 (Dkt. 30). A hearing on this motion was held on May 14, 2014, after which the motion was withdrawn and the parties entered into a stipulated

---

[1] Defendant DocNetwork LLC used to be called CampDoc LLC. In May 2013, the articles of organization for CampDoc LLC were amended and its name was changed to DocNetwork LLC. Am. Compl. ¶ 4 (Dkt. 5); Pl. Resp. at 3 n.1 (Dkt. 32). However, the "CampDoc" label is still used in the marketing and promotion of the program. Am. Compl. ¶ 6. Accordingly, the parties refer to DocNetwork as "CampDoc." Id.; Defs. Mot. ¶ 2.

order (Dkt. 29). The order provided that: (1) Plaintiff would identify the camps for which she believed Defendants had not produced the requested documents; (2) after receiving a list of identified camps, Defendants would have one week to produce the documents; and (3) Plaintiff could thereafter serve the subpoenas relating to any documents that were not produced. 5/16/14 Order at 4-5 (cm/ecf pages) (Dkt. 29).

On June 16, 2014, Plaintiff provided notice to Defendants that she intended to serve new subpoenas directed to 183 of Defendants' customer camps. Defs. Mot. ¶ 2; Pl. Resp. at 5. The subpoenas sought two types of documents: (1) any and all contracts and/or agreements between CampDoc and said camp; and (2) any and all payments made to CampDoc during the relevant time period. See Exhibit A to Subpoenas, Ex. 2 to Defs. Mot. at 2 (Dkt. 30-6).

On June 27, 2014, Defendants' filed a motion for a protective order and to quash the subpoenas (Dkt. 30). Plaintiff filed a response (Dkt. 32), to which Defendants filed a reply (Dkt. 33). A hearing on the matter was held on August 21, 2014. Defendants then filed a supplemental brief on August 29, 2014 (Dkt. 34).

### III. STANDARDS OF DECISION

Under the Federal Rules of Civil Procedure, the scope of discovery is broad, entitling parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). As to non-parties, Rule 45(a)(1)(A)(iii), permits a party to serve a subpoena on a non-party, commanding that party to "attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises" at a specified time and place. See also Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection.").

Upon a timely motion, the Court <u>must</u> quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The Court <u>may</u> quash or modify a subpoena that requires "disclosing trade secret or other confidential research, development, or <u>commercial information</u>." <u>Id.</u> at 45(d)(3)(B)(i) (emphasis added). The party seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted. <u>Atlantech, Inc. v. Am. Panel Corp.</u>, No. 11-50076, 2011 WL 2078222, at *2 (E.D. Mich. May 24, 2011) (citing <u>Concord Boat Corp. v. Brunswick Corp.</u>, 169 F.R.D. 44, 48 (S.D.N.Y. 1996); <u>Irons v. Karceski</u>, 74 F.3d 1262, 1264 (D.C. Cir. 1995)).

Rule 26(c) governs the entry of a protective order upon a showing of good cause. Fed. R. Civ. P. 26(c)(1) (providing that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Thus, upon a showing of good cause, the Court may issue an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(D).

"The burden of establishing good cause for a protective order rests with the movant." <u>Nix v. Sword</u>, 11 F. App'x 498, 500 (6th Cir. 2001) (citing <u>Gen. Dynamics Corp. v. Selb Mfg. Co.</u>, 481 F.2d 1204, 1212 (8th Cir. 1973)); <u>see also</u> <u>Waulde v. Merck, Sharp & Dohme</u>, 94 F.R.D. 27, 28 (E.D. Mich. 1981). A party demonstrates good cause by articulating "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." <u>Nix</u>, 11 F. App'x at 500 (quoting <u>Avirgan v. Hull</u>, 118 F.R.D. 252, 254 (D.D.C. 1987)); <u>see also</u> <u>Underwood v. Riverview of Ann Arbor</u>, No. 08-CV-11024-DT, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008) (burden to establish good cause

3

for protective order not met where party provided "no specific facts demonstrating a serious injury to support . . . conclusory statement [of harm]").

## IV. ANALYSIS

### A. The Parties' Arguments

Defendants argue that quashing the subpoenas or entering a protective order would protect them from the "real and substantial" threat to "CampDoc's customer base" posed by the subpoenas, and avoid damage to their client relationships. Defs. Mot. ¶¶ 21, 24. According to Defendants, they "stand a very high chance of losing a significant portion of their client base" if the subpoenas are issued. Id. ¶ 21. Defendants also seek a protective order – prohibiting discovery directed to third parties – because issuing the subpoenas would "harass and burden Defendants' client base for no legitimate purpose." Id. ¶¶ 26, 27. Specifically, Defendants ask that the Court "prohibit all discovery directed to third parties with respect to damages, and in particular prohibit contact with any of Defendants' clients until such time that Plaintiff can prove liability and until such time that the Parties themselves have engaged in adequate discovery to determine if direct contact with third-parties is actually necessary." Id. ¶ 27. Defendants state that, if the 183 subpoenas are not withdrawn, they "will be forced to file a Motion to Bifurcate Discovery between liability and damages to stop Plaintiff's fishing expedition." Id. ¶ 20.

Plaintiff responds with the following four arguments: (1) pursuant to Federal Rule of Civil Procedure 29(b), Defendants agreed in writing to utilize the same procedure provided for in the May 16th Order; (2) the Court has already entered an order addressing this issue; (3) Defendants' conclusory statements fail to specifically set forth the good cause required for a protective order; and (4) bifurcation of the discovery process would be inefficient, lengthen litigation, and require ongoing court supervision. Pl. Resp. at 5-9.

4

In their reply, Defendants first argue that the May 16th Order applies only to the first 35 subpoenas, which were the subject of Defendants' first motion for protective order and to quash subpoenas. Defs. Reply at 2. Defendants further state that, given the number of subpoenas now at issue, a search of CampDoc's records to prevent the issuance of the subpoenas will be too burdensome and "virtually impossible" to complete. Id. at 3. According to Defendants, the third-party camps will also face an undue burden in responding to subpoenas issued during the busy summer months. Id. at 5. Finally, Defendants contend that bifurcating discovery between liability and damages "would eliminate the substantial risks and burdens the abusive 183 subpoenas pose to Defendants and their business relationship with their client base." Id. at 6.

After the hearing on the second motion was held, Defendants filed a supplemental brief in support of their motion after obtaining 147 pages of documents that Plaintiff received in response to the initial third-party subpoenas. Defs. Supp. Br. at 1. Defendants attached the documents they received as a sealed exhibit. See Ex. A to Defs. Supp. Br. (Dkt. 37). According to Defendants, "the documents are entirely duplicative of documents already supplied to Plaintiff by Defendants." Defs. Supp. Br. at 2. Defendants contend that, because such information "can already be obtained from Defendants," issuing the subpoenas "would place an entirely unnecessary burden on a small army of third parties who have no connection to this litigation." Id. at 3.

**B. Discussion**

The Court first addresses whether the subpoenas should be quashed, and then proceeds to analyze whether a protective order prohibiting all discovery directed to third parties with respect to damages should be entered. For the reasons that follow, the Court will deny both of Defendants' requests.

5

### 1. Request to Quash Subpoenas

In order for Defendants to challenge the third-party subpoenas, they must have standing. A party generally lacks standing to challenge a subpoena directed to a non-party unless it claims a privilege or demonstrates a personal interest. Sys. Prods. & Solutions, Inc. v. Scramlin, No. 13-CV-14947, 2014 WL 3894385, at *7 (E.D. Mich. Aug. 8, 2014) (citing Underwood v. Riverview of Ann Arbor, No. 08-CV-11024-DT, 2008 WL 5235992, at *1 (E.D. Mich. Dec. 15, 2008); Mann v. Univ. of Cincinnati, 114 F.3d 1188 (Table), at *6 (6th Cir. 1997) (recognizing that a party usually does not have standing to contest a third-party subpoena unless the party invokes a personal interest or claims a privilege)); see also Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir.1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."). Since Defendants have not asserted any privilege, their standing is dependent upon a finding of a personal interest in the subpoenaed documents.

As the Court has recently noted, a personal interest may arise in a variety of contexts, including "employment records held by a subpoenaed non-party" or "banking records of a party in the possession of a financial institution." Scramlin, at *7 (citing Halawani v. Wolfenbarger, No. 07–15483, 2008 WL 5188813, at *1 (E.D. Mich. Dec.10, 2008) (involving subpoena for personnel files and home addresses); Catskill Dev., L.L.C. v. Park Place Ent. Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (involving monthly bank statements)).

In this case, the subject matter of the subpoenas at issue relates to contracts, agreements, and payment information and records between Defendants and their clients. Given that this commercial information pertains to Defendants and their customers, Defendants have a personal interest in the subpoenaed documents, and thus standing to challenge the subpoenas.

In support of their argument to quash the subpoenas, Defendants contend that the harassment and the burden of answering the subpoenas may damage their client-relationships, which may result in Defendants losing these clients. Defs. Mot. ¶ 21. However, defense counsel admitted at the August 21st hearing that Defendants did not hear from the seven camps that had already received and responded to earlier subpoenas. 8/21/14 Hr'g Tr. at 3. Furthermore, the record contains no other facts demonstrating that Defendants' relationships with their clients have been damaged as a result of the subpoenas. As any allegation of harm at this point is entirely speculative, Defendants have failed to sufficiently demonstrate that the relationships with their clients will be damaged if the subpoenas are issued.

Defendants also argue that the burden of responding to the subpoenas is particularly high because summer camps are busiest during the summer months. Defs. Reply at 5. While it is certainly possible that summer camps may find it more burdensome to respond to a subpoena during the summer months, given that it is now early autumn, the Court is not persuaded that the camps' burden is the same as it would have been in June or July.

Lastly, Defendants argue in their supplemental brief that the third-party camps would face an unnecessary burden in responding to the subpoenas, since the information requested is already obtainable from Defendants. Defs. Supp. Br. at 3. Aside from this conclusory statement, Defendants offer no substantiation for their contention of burden. In any event, there is no better assurance that all requested documents are produced than to seek them from parties with no stake in the outcome of this litigation.

Accordingly, the Court denies Defendants' request to quash the third-party subpoenas.

### 2. Request for Protective Order

In addition to the request to quash the non-party subpoenas, Defendants also request a protective order, pursuant to Federal Rule of Civil Procedure 26, to prohibit all discovery directed to third parties with respect to damages until Plaintiff can prove liability, or until the parties have engaged in discovery to determine if third-party discovery is necessary. Defs. Mot. at ¶¶ 26, 27; Defs. Reply at 6. Defendants have offered no authority in support of this argument. The Court will grant a request to bifurcate discovery between liability and damages only when there is a showing of good cause. See Fed. R. Civ. P. 26(c)(1) and (d)(2)(A). Defendants bear the burden of establishing good cause for the protective order. See Nix, 11 F. App'x at 500.

Insofar as Defendants contend that the subpoenas will harass and damage their client relationships, such conclusory statements and unsubstantiated speculation of adverse actions taken on behalf of non-parties in response to a subpoena fail to constitute good cause for a protective order. See Underwood, at *3 ("The speculative and conclusory nature of Defendant's alleged potential injury counsels this court against granting the protective order as it relates to Plaintiff's subpoena to the [third party]."); Tenneco Auto. Co., Inc. v. Kingdom Auto Parts, No. 08-CV-10467-DT, 2009 WL 36428, at *2 (E.D. Mich. Jan. 6, 2009) ("Although service of these subpoenas could potentially adversely impact Defendants' businesses, the injury forecast by Defendants is speculative and conclusory to the extent that it fails to establish good cause."); see also Levitin v. Nationwide Mut. Ins. Co., No. 2:12-cv-34, 2012 WL 6552814, at *5 (S.D. Ohio Dec. 14, 2012) ("Plaintiff's unsupported speculation that his former employers will retaliate against him is not enough to establish the requisite good cause showing for a protective order.").

As previously noted, Defendants have not been contacted by any of their clients who have already responded to earlier subpoenas. Thus, to the extent that Defendants argue that

responding to the documents may damage the relationships with their clients, such allegations of harm are entirely speculative and lack the specificity required under Nix.  Because Defendants have not articulated any specific facts showing clearly defined and serious injury resulting from the discovery sought, the Court concludes that Defendants have failed to show good cause to issue a protective order prohibiting third-party discovery with respect to damages.

Accordingly, the Court denies Defendants' request for a protective order.

### V.  CONCLUSION

For the reasons stated above, the Court denies Defendants' second motion for a protective order and to quash subpoenas (Dkt. 30).

SO ORDERED.


|  |  |
|---|---|
| Dated: October 7, 2014<br>Detroit, Michigan | s:\Mark A. Goldsmith<br>MARK A. GOLDSMITH<br>UNITED STATES DISTRICT JUDGE |

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 7, 2014.

s/Johnetta M. Curry-Williams
JOHNETTA M. CURRY-WILLIAMS
CASE MANAGER