UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTA BLUMBERG,

       Plaintiff,

                                       Case No. 13-cv-15042

v.

                                       HON. MARK A. GOLDSMITH

MICHAEL AMBROSE, et al.,

       Defendants.

_____/

**OPINION AND ORDER
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 59)**

**I.  INTRODUCTION**

       This matter is before the Court on Defendants' motion for summary judgment (Dkt. 59). The parties have fully briefed the issues, and a hearing was held on June 11, 2015. Defendants seek a ruling that, as a matter of law, no partnership relationship was ever formed between Plaintiff Roberta Blumberg and Defendant Michael Ambrose, thereby defeating all of Plaintiff's claims. As explained fully below, the Court finds a question of fact as to that issue and denies Defendants' motion.

**II.  BACKGROUND**

       During the summer of 2004, Roberta Blumberg and Michael Ambrose worked together at the health clinic of Tamarack Camps ("Tamarack") in Oakland County, Michigan. Blumberg Aff. ¶¶ 3-5 (Dkt. 61-2). At that time, Blumberg was a registered nurse and the Director of Health and Safety at Tamarack, while Ambrose was an undergraduate student and a clinical assistant. Id. ¶¶ 2-4; Blumberg Dep. at 10-11 (Dkt. 59-2). The two discussed the possibility of reducing the amount of paperwork at the camp by creating a digitized system to electronically

1

maintain camp medical records. Am. Compl. ¶¶ 10-12 (Dkt. 5); Blumberg Aff. ¶ 4. Blumberg and Ambrose eventually collaborated to create and market a for-profit web-based electronic medical records program called "CampDoc" that would allow camps to input and access the medical records of their campers. Blumberg Aff. ¶ 5. This program was expanded to allow parents the ability to fill out health forms and medical histories on-line, as well as electronically submit information regarding allergies and medications. Id.

Although Blumberg states that she participated in both the design and the development of the CampDoc system, including its prototype, id. ¶¶ 6, 21, 30, Ambrose wrote the code for the CampDoc software. Blumberg Dep. at 35. Blumberg's role also included testing and marketing the CampDoc program, Blumberg Aff. ¶ 21, while Ambrose handled administrative matters for CampDoc. Id. ¶¶ 21, 28.

In the summer of 2009, Blumberg and Ambrose were able to pilot the software program at Tamarack. Blumberg Aff. ¶ 8. With the success of the pilot program, the two decided to market and sell the CampDoc program to other camps across the county. Id.

In October 2009, Ambrose filed articles of incorporation for CampDoc as a Michigan limited liability company and, unbeknownst to Blumberg, included himself as the sole member. See CampDoc Articles of Incorporation (Dkt. 59-10); Am. Compl. ¶ 5; Blumberg Aff. ¶ 21.[1] As part of organizing the company, Ambrose told Blumberg that she needed to sign several documents, including an employment agreement, which she did in May 2010. Blumberg Aff. ¶ 22; Blumberg Dep. at 38, 42, 45; Emp't Agreement (Dkt. 59-4); Confidentiality Agreement (Dkt. 59-5); Non-Competition Agreement (Dkt. 59-6). However, Blumberg did not believe that

---

[1] Defendant DocNetwork LLC used to be called CampDoc LLC. In May 2013, the articles of organization for CampDoc LLC were amended, and its name was changed to DocNetwork LLC. See Am. Compl. ¶ 4 (Dkt. 5); Answer ¶ 4 (Dkt. 12). However, the "CampDoc" label is still used in the marketing and promotion of the program. Am. Compl. ¶ 6; Answer ¶ 6. The parties refer to DocNetwork as "CampDoc," and the Court will do the same.

these documents altered her relationship as a partner with Ambrose. Blumberg Aff. ¶ 22. Ambrose also had conversations with Blumberg in 2011 about her interest in the profits of CampDoc, and he told her that "she would receive some percentage of the profits from the business." Ambrose Dep. at 185-186 (Dkt. 61-3).

From 2010 to March 2012, Blumberg attended conferences for CampDoc. Id. ¶ 32. Blumberg also claims to have "brought several dozen camps on board in 2011," but she was not paid for that work. Id. ¶ 16. And, in 2012, Blumberg quit her job "as a registered nurse to devote [her] attention to CampDoc." Id. ¶ 24. Blumberg never received compensation for her services in 2009. Ambrose Dep. at 88, 148. Blumberg was paid $100 in 2010, $1,000 in 2011, $6,250.02 in 2012, and $18,750.06 in 2013. Id. at 95, 145, 148-149; see also 2011 Form 1099 at 2 (cm/ecf page) (Dkt. 59-7); 2012 Form 1099 at 3 (cm/ecf page) (Dkt. 59-7); 2013 Form 1099 at 5 (cm/ecf page) (Dkt. 59-7). Ambrose testified that, although he believed Blumberg's services in 2010 and 2011 were worth more than what she actually received, see Ambrose Dep. at 166-167, it was his intention to make Blumberg "a millionaire." 9/17/2012 Email at 3 (cm/ecf page) (Dkt. 59-11); Ambrose Dep. at 192 (answering in the affirmative when asked whether he "ever [told] Roberta Blumberg that [he] had every intention of mak[ing] her a millionaire"); Blumberg Aff. ¶ 27.

In September 2012, Ambrose provided Blumberg with four more documents to sign – a consulting agreement, a participation plan agreement, a non-compete/non-disclosure agreement, and a confidentiality agreement. 9/2/2012 Email at 4 (cm/ecf page) (Dkt. 59-11). Although Blumberg claims that Ambrose considered her a "co-founder," and called her "the heart and face of the company," Blumberg Aff. ¶¶ 9, 19, Blumberg states that Ambrose's lawyers advised him that she should not be listed as an owner of CampDoc. Blumberg Aff. ¶ 27. Rather, Ambrose

3

suggested that Blumberg own a "phantom" interest in the company, which would be "the equivalent of real equity." Id.

After reviewing the documents, Blumberg informed Ambrose on September 11, 2013, that she intended to seek legal advice. 9/11/2013 Email at 2 (cm/ecf page) (Dkt. 61-5). Ambrose then terminated Blumberg's "employment" with CampDoc the following day. 9/12/2013 Email at 2 (cm/ecf page) (Dkt. 59-12); Ambrose Dep. at 195. Ambrose and CampDoc continue to market and sell the CampDoc program. Am. Compl. ¶ 40; Defs. Br. at 4 (Dkt. 59).

Blumberg initiated the instant action in December 2013, naming Ambrose and CampDoc as Defendants. According to Blumberg, the association between herself and Ambrose created a partnership for this business endeavor under the Michigan's Uniform Partnership Act. Mich. Comp. Laws § 449.6(1); Am. Compl. ¶ 20.[2]

### III. STANDARD OF DECISION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, 573 F.3d 365, 373 (6th Cir. 2009) (quotation marks and brackets omitted).

---

[2] Plaintiff's amended complaint asserts diversity jurisdiction, Am. Compl. ¶ 7, and, thus, Michigan law controls.

4

When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted). "To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004). The opposing party "may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (quotation marks omitted). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 447 U.S. at 252.

## IV. ANALYSIS

Michigan's Uniform Partnership Act defines a "partnership" as being a voluntary "association of 2 or more persons . . . to carry on as co-owners a business for profit." Mich. Comp. Laws § 449.6(1); Miller v. City Bank & Trust Co., N.A., 266 N.W.2d 687, 690 (Mich. Ct. App. 1978). Whether a partnership exists is typically a question of fact. See Ross v. Ihrie, No. 05-71420, 2006 WL 3446897, at *7 (E.D. Mich. Nov. 28, 2006) (quoting Miller, 266 N.W.2d at 689). The parties need not possess the subjective intent to form a partnership in order for one to exist. Dell'Orco v. Brandt, No. 03-71929, 2005 WL 1355088, at *10 (E.D. Mich. May 3, 2005); Ross, 2006 WL 3446897, at *7 ("The definition of partnership is devoid of any requirement that the individuals have the subjective intent to create a partnership."). Rather, the proper focus of

5

the Court's inquiry "is on whether the parties intended, and in fact did, carry on as co-owners a business for profit." Byker v. Mannes, 641 N.W.2d 210, 218 (Mich. 2002).

In the absence of an express partnership agreement, the existence of a partnership is determined by the parties' conduct as it relates to the business. Ross, 2006 WL 3446897, at *7 (citing Van Stee v. Ransford, 77 N.W.2d 346, 355 (Mich. 1956)). Courts have identified numerous factors to consider in determining whether a partnership exists, including: (i) sharing in the profits and losses of the business; (ii) contribution of capital, credit, skill, or labor; (iii) joint liability; (iv) mutual agency; (v) common authority in the administration and control of the business; (vi) common interest in the capital employed; and (vii) filing of a certificate of partnership. See Mich. Emp't Sec. Comm'n v. Crane, 54 N.W.2d 616, 619 (Mich. 1952); McMahon v. McMahon, No. 270477, 2007 WL 3274862, at *4 (Mich. Ct. App. Nov. 6, 2007) (per curiam); Gunnett v. Brooks, No. 263838, 2007 WL 127844, at *3 (Mich. Ct. App. Jan. 18, 2007) (per curiam); see also Mich. Comp. Laws § 449.7 (listing various rules for determining the existence of a partnership). "[S]haring in the profits of the business is the most probative evidence of partnership." Sunseri v. Proctor, 461 F. Supp. 2d 551, 571 (E.D. Mich. 2006) (citing Mich. Comp. Laws § 449.7).

### A. The Parties' Arguments

Defendants raise several arguments in support of their contention that a partnership did not exist in this case. First, Defendants argue that the only written agreements that existed between the parties were an employment agreement, a confidentiality agreement, and a non-compete/non-solicitation/confidentiality agreement, all of which Blumberg signed in May 2010. Defs. Br. at 12-13 (Dkt. 59); Emp't Agreement (Dkt. 59-4); Confidential Agreement (Dkt. 59-5); Non-Competition Agreement (Dkt. 59-6). According to Defendants, these agreements defeat

Blumberg's claim that a partnership existed because they suggest that the only relationship between the parties was an employer-employee relationship. Defs. Br. at 12-13, 15.

Second, Defendants contend that there is no factual dispute that Blumberg received occasional commissions or bonuses from January 2010 through September 2012, pursuant to those agreements. Id. at 13. Defendants further state that Blumberg received a monthly salary as an independent contractor from October 2012 through September 2013. Id. According to Defendants, Blumberg also received a Form 1099 for the 2011-2013 tax years, which Defendants contend further supports their position that Blumberg was receiving wages as a mere employee or independent contractor, not as a partner. Id. at 13, 15. Defendants argue that, even if there was an agreement between the parties on September 2012 with respect to employee profit sharing, the payment of profits as wages of an employee or independent contractor would not constitute indicia of a partnership. Id. at 13-14.

Third, Defendants argue that Blumberg's deposition testimony illustrates "her complete lack of knowledge and control over the very basic operations of CampDoc," which, according to Defendants, strongly militates "against any right of co-ownership, mutual agency or right to management." Defs. Br. at 16. Defendants contend that Blumberg has not met her burden of establishing a partnership, given her "complete ignorance regarding the development, financing, operations, decision making, management[,] and structure of CampDoc." Id. at 19.

Last, Defendants argue that Blumberg's failure to demonstrate the existence of a partnership warrants dismissal of all counts alleged in the second amended complaint,[3] as those counts necessarily rely on the existence of a partnership. Id. at 19-21. Defendants also argue

---

[3] Plaintiff asserts the following causes of action in her amended complaint: (i) usurpation of a partnership business opportunity; (ii) statutory and common-law conversion; (iii) demand for the winding up of the partnership; (iv) declaratory judgment; (v) breach of a fiduciary duty; and (vi) demand for a formal account. Am. Compl. ¶¶ 42-73.

7

that Ambrose is entitled to summary judgment on count III (demand for winding up of partnership), count IV (declaratory judgment), and count VI (demand for formal account) of the amended complaint because those "counts contain allegations directed solely to the corporate defendant CampDoc and are not legally cognizable claims against Dr. Ambrose individually." Id. at 21-22.

In response, Blumberg argues that there are genuine issues of fact regarding the existence of a partnership. For instance, Blumberg states that she and Ambrose "worked together to create, market and monetize CampDoc," for which many hours of work went uncompensated. Pl. Resp. at 16 (Dkt. 61). Blumberg also claims that Ambrose told her that she was going to be a millionaire, and that he referred to her as a "co-founder" of CampDoc. Id. Blumberg further states that she and Ambrose had discussed percentages of equity ownership in CampDoc. Id. Although the two were unable to reach an agreement on this issue, Blumberg argues that the default provisions of the partnership act provide that she and Ambrose share the partnership's profits equally. Id. at 16, 20.

Blumberg also argues that she was not merely an employee of CampDoc. According to Blumberg, she and Ambrose began working on CampDoc years prior to her signing any agreements, and when she did sign the agreements in May 2010, she did not believe that they modified her relationship as a partner. Id. at 17-18. While acknowledging that she received some financial compensation for her work on CampDoc, Blumberg claims that she was not paid in 2009, she was only paid $100 in 2010, and her services were worth more than the $1,000 she received in 2011. Id. at 19. Blumberg further states that Ambrose did not consider her an employee in 2011. Id. Blumberg also argues that the employment agreement is illusory and,

8

therefore, it "cannot form a proper basis for any determination that [she] was merely an employee." Id. at 20.

Regarding her lack of knowledge about CampDoc's daily operations, Blumberg contends that such evidence does not counsel against her claims of a partnership, because she and Ambrose had agreed that he would handle administrative matters. Id. at 20-21. By doing so, Blumberg states that she focused her efforts on the research, development, testing, and marketing of the program. Id. at 21.

Last, Blumberg argues that counts III, IV, and VI should not be dismissed as to Ambrose, because those claims are not directly solely against CampDoc. Id. According to Blumberg, summary judgment is not warranted in this case, because those claims ultimately "turn on the existence of a partnership." Id.

### B. Discussion

In this case, there was no express agreement among the parties concerning the formation of a partnership. Thus, the Court must determine whether the parties' conduct demonstrates their intention to carry on CampDoc for profit as co-owners. Although it is a close call, the Court finds that Blumberg has presented sufficient evidence to create a genuine issue of material fact regarding the existence of a partnership.

Various actions by Ambrose support the conclusion that a partnership existed between himself and Blumberg. For instance, Ambrose told Blumberg that she was going to "make millions," Blumberg Aff. ¶ 27; see also 9/17/2012 Email at 3 (cm/ecf page) (stating that Ambrose intended to make Blumberg "a millionaire"), which the Court finds would be a rather hefty wage for a mere employee. Ambrose also told Blumberg that he considered her a "co-founder," as well as the "heart and face" of CampDoc. Id. ¶¶ 9, 19. And it was not until late in

9

the relevant timeframe that Ambrose ever protested that Blumberg was not a partner. See Blumberg Aff. ¶ 26. Moreover, when negotiating a more formal arrangement in the fall of 2012, Ambrose proposed a "phantom" equity ownership that would functionally recognize Blumberg as an equity owner. Id. ¶ 27. Lastly, while some of Blumberg's time was compensated under an employee agreement, much of it wasn't, and, for significant periods of time, Blumberg was paid little or nothing for her efforts. See Blumberg Aff. ¶ 6, 14, 16, 32; Ambrose Dep. at 90, 145, 148-149, 166-167. In viewing these facts in the light most favorable to Blumberg, the Court finds that there is a genuine issue of material fact concerning the existence of a partnership between the parties.

Although Defendants argue that Blumberg lacked awareness of the CampDoc's daily administrative operations, this does not necessarily weigh against her ability to participate and control the administration of the business, nor does it establish that there was no mutual agency among the parties. It is important to note that "it is not necessary that [actual] control be exercised as long as it exists." Miller, 266 N.W.2d at 690. In "the absence of the exercise of control or mutual agency, evidence of an agreement in respect to the division of control is about the only way to prove mutual agency and control." Id.

In this case, Blumberg claims that she and Ambrose agreed that he would handle the administrative matters for CampDoc, allowing her to focus on the research and development of the system, as well as the testing and marketing of the system. Blumberg Aff. ¶¶ 21, 28. Blumberg's lack of knowledge about CampDoc's daily operations conforms to the parties' agreement that Ambrose would be solely responsible for administrative matters.

Defendants also point out that, during her deposition, Blumberg testified that she did not know if she ever invested any financial capital in CampDoc. Defs. Br. at 5 (citing Blumberg

Dep. at 135).[4] Nor does she allege a common interest in the capital that was employed for either the creation of CampDoc or the prototype software. However, investment of capital is not fatal to Blumberg's claim for a partnership. The investment of time, labor, and skill is evidence of a partnership. Vettese v. Zher, No. 255919, 2005 WL 3439788, at *1 (Mich. Ct. App. Dec. 15, 2005) (finding that reasonable minds could conclude that a partnership existed in part because each contributed to the enterprise through capital, land, labor, or expertise).

In this case, Blumberg contributed arguably valuable input and expertise into the design of the program and recruited several initial customers. In particular, Blumberg states that she brought several dozen camps on board in early 2011, and she was involved in designing CampDoc's marketing materials, as well as participating in the design and development the program. Blumberg Aff. ¶¶ 16, 30. Blumberg further claims that she communicated with CampDoc employees and customers regularly, attended conferences to market CampDoc, and was the person responsible for signing up many of CampDoc's customers. Id. ¶¶ 30, 32. Blumberg's contributions of labor, skill, and expertise evidence the existence of a partnership. See Vettese, 2005 WL 3439788, at *1.

It is true that the parties did not file a certificate of partnership as required under Michigan law. See Mich. Comp. Laws § 449.101 ("No 2 or more persons shall hereafter be engaged in carrying on any business as copartners unless such persons shall first make and file with the county clerk of the county in which such copartnership business is or shall be located, a

---

[4] As it relates to contributions to the partnership, Blumberg asserts in her affidavit that she invested money in CampDoc by: (i) paying her own way to attend at least one conference in 2010, (ii) quitting her job in 2012 to devote her time to CampDoc, and (iii) working many hours without pay. Blumberg Aff. ¶ 32. Blumberg claims that she used eight vacation days from her regular job to attend conferences for CampDoc in December 2011, and February and March 2012, for which she was not reimbursed. Id. Blumberg further claims that she offered to use her personal funds to help finance CampDoc, but Ambrose told her it was not necessary. Id.

11

certificate in writing[.]"). However, the failure to file the certificate is not dispositive; it is only one factor in determining whether a partnership has been formed. See Gunnett, 2007 WL 127844, at *3.

Defendants, as the moving parties, have the burden of establishing the absence of any genuinely disputed issue of fact. The Court concludes that the above facts, when viewed as a whole and in the light most favorable to Blumberg, sufficiently demonstrate a factual basis for Blumberg's contention that the parties acted in association to carry on for profit a business as co-owners.[5]

Regarding Defendants' argument that counts III, IV, and VI "contain allegations directed solely to the corporate defendant CampDoc and are not legally cognizable claims against Dr. Ambrose individually," Defs. Br. at 21-22, the Court concludes that Ambrose is not entitled to summary judgment on those counts.

Count III alleges that Ambrose's action in terminating his relationship with Blumberg amounted to dissolution of the partnership, and Blumberg demands a winding up of the partnership. Am. Compl. ¶¶ 54, 56 (citing Mich. Comp. Laws §§ 449.31(1)(b), 449.37). Count IV seeks a declaration of "rights and legal relations between Plaintiff and Ambrose with respect to the partnership and the Program," in the event "the Court determines that dissolution of the

---

[5] In their reply brief, Defendants argue that the Court should disregard Blumberg's affidavit attached to her response, which was created after the motion to dismiss was filed, because it contradicts portions of her earlier deposition testimony. See Defs. Reply at 3-4. Defendants suggest that Blumberg's "I don't know" and "I don't recall" responses during her deposition testimony directly contradict portions of her affidavit addressing the same topics. Id. The Court disagrees. Although "a party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony," Aerel, S.R.L. v.. PCC Airfoils L.L.C., 448 F.3d 899, 906 (6th Cir. 2006), the Court finds that the "I don't know" answers during Blumberg's deposition testimony do not directly contradict any of the assertions made in the affidavit. There is also no evidence to suggest that Blumberg's affidavit "constitutes an attempt to create a sham fact issue." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 593 (6th Cir. 2009); accord Aerel, 448 F.3d at 909.

partnership is improper." Id. ¶ 60. Count VI alleges that "Ambrose wrongfully excluded Plaintiff from the partnership when he purportedly 'fired' her in September 2013," id. ¶ 71, and, as such, Blumberg "demands a formal account as to the partnership affairs." Id. ¶ 73.

If Blumberg is found to be a partner, she could be awarded the relief sought in counts III, IV, and VI, including the right to compel the winding up of a partnership or a formal accounting of the partnership. See Mich. Comp. Laws § 449.37 ("[T]he partners who have not wrongfully dissolved the partnership . . . [have] the right to wind up the partnership affairs." (emphasis added)); id. §§ 449.22 ("Any partner shall have the right to a formal account as to partnership affairs: (a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, [or] . . . (d) Whenever other circumstances render it just and reasonable." (emphasis added)); id. § 449.21(1) ("Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." (emphasis added)). Defendants have failed to provide any legal authority to the contrary. Therefore, the Court rejects Defendants' argument that Ambrose is independently entitled to summary judgment on these three counts.

## V. CONCLUSION

For the reasons stated above, the Court denies Defendants' motion for summary judgment (Dkt. 59). The Court further orders an in-person status conference with counsel on October 7, 2015 at 4:00 p.m.

SO ORDERED.

Date: September 23, 2015  s/Mark A. Goldsmith
  Detroit, Michigan  MARK A. GOLDSMITH
  United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 23, 2015.

                                                  s/Carrie Haddon
                                                  Case Manager